## STANDARD OIL CO. OF NEW JERSEY et al. v. ST. PAUL FIRE & MARINE INS. CO.

District Court, S. D. New York.

April 16, 1945.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Ira A.

Campbell, Edwin S. Murphy, and Helen C. Cunningham, all of New York City, of counsel), for libelants.

Bigham, Englar, Jones & Houston, of New York City (Oscar R. Houston and Ezra G. Benedict Fox, both of New York City, of counsel), for respondent.

HULBERT, District Judge.

The libel in this suit in admiralty was filed on June 17, 1941, and alleged, among other things, the substantial loss of a cargo of petroleum due to the stranding of the M/S Petter, covered by policy and certificate of insurance issued by the respondent, wherein the cargo was valued at $346,515. The sum of $10,124.40 was realized on the sale of the damaged cargo and a claim was filed for the balance of $336,390.60. After a trial of the issues counsel for the respondent submitted a brief in which it was stated (in a footnote, page 11):

"We shall not deal with questions as to the amount of the recovery to which the libellant would be entitled in the event of a decree in its favor as we assume that this question would be referred to a Commissioner."

On January 31, 1945, the court filed its opinion, together with findings of fact and conclusions of law. 59 F.Supp. 470, 472. The 21st finding reads, as follows:

"21. In addition to the cash consideration paid by the purchaser, the Eagle Oil & Shipping Co. Ltd., through whom the sale was made, waived its 'salvage' or demurrage claim for the time occupied by the San Gerardo in holding the oil. The cash proceeds of the cargo, $10,124.40 were lodged in court. The invoice value of the cargo was $119,650.41 and the freight prepaid to the owner of the Petter, $184,995.72; the value stated in the certificate of insurance calculated pursuant to clause VI as amended was $346,515.00, and the recovery sought as the salvage loss is the difference between the value and the salvage recovery, or $336,390.60."

The interlocutory decree was submitted on March 27, 1945, and contemporaneously therewith proctors for respondent filed a counter memorandum requesting "that the entry of an interlocutory decree referring this case to a Commissioner be postponed until we can secure instructions from England as to whether our clients desire to contest the basis on which libellant contends the damages should be computed."

On the other hand, the libelants point out that following the suggestion contained in the opinion of the court, they endeavored, unsuccessfully, to reach an agreement with respondent as to the amount of damages, but were notified on Friday, March 23rd, for the first time, that respondent's position was that this case involved a particular average loss and not a salvage loss.

Libelants' exhibits 19 and 19-a indicate that respondent was advised on December 6, 1940, as to the exact nature and amount of libelants' claim.

The orderly course of expeditious consideration of this case requires that the proposed decree be passed upon and it has been signed and will be filed herewith.